Booth, Judge,
delivered the opinion of the court:
The record in this case affords no room for difference as to essential facts. The plaintiff company sues to recover for storage space used and occupied by the defendant for a period of time subsequent to the cancellation of two munition contracts. The first contract between the parties was executed August 28, 1918, and obligated the plaintiff company to manufacture a certain type of projectiles. The second, executed September 10, 1918, embraced the doing of certain finishing work on bombs, the Government as to each *291 contract being required to furnish some of the component parts of the products. Both contracts contained a similar provision respecting the storage of finished articles, it being provided that the plaintiff company, at its own expense, but at the risk of the defendant, should provide storage space of sufficient capacity to store two months’ deliveries of finished articles at the rate of delivery provided in the contracts. In other words, the storage space to be provide! must be sufficient to care for at least 80,000 bombs and 28,800 projectiles. Each contract further provided that upon written notice the Chief of Ordnance might require, at the expense and risk of the defendant, additional storage space, either in or outside the plaintiff’s plant. These two provisions covering storage of finished articles clearly evince an intent to reimburse the plaintiff for additional storage exacted under the contract and constitute an express understanding and notice that storage of the munitions to be delivered was in the contemplation of the defendant an essential factor, one to be anticipated, and for which the contractor was to be paid upon agreement as to price.
It is true that additional outside storage facilities were not exacted. The plaintiff amply provided for the situation within its plant; but it is apparent that the defendant cautiously anticipated the exact situation which did come about, utilized the storage space provided until it needed the same no longer and acknowledged indebtedness therefor, contesting only the price asked. The plaintiff company erected in its plant what the parties designate as a bonding room— a frame structure of quite large dimensions, i. e., 1,000 square feet — into which the completed munitions were stored and there kept under lock and key until such time as needed. The Government inspector was in exclusive control of this room, kept personal possession of the keys and allowed no one to enter unaccompanied by him. The property in the room was Government property; it had been inspected and accepted as such by the inspector, and the Government officers remained in exclusive possession and control of the same until September 30, 1919, the day on which the munitions were removed therefrom. Outside the bonding room, occupying 1,000 square feet of floor space, the material for *292 the bomb contract was compactly piled. This material was the property of the Government. No part of it ever belonged to the plaintiff company.
On December 11 and 13, respectively, following the armistice, both contracts were canceled. The defendant, however, continued in possession of the 2,000 square feet of storage, over the protest and in the face of repeated demands to remove the materials or pay storage therefor, until the same were sold to a third party on September 30, 1919. The Government inspector who remained at the plant for some considerable time after the contracts were canceled on January 31, 1919, the date fixed in the cancellation notices for the absolute and final termination of all work under the contracts, furnished, evidently at the solicitation of the Army inspector of ordnance, a detailed survey of the storage facilities of the plaintiff company, and stated that they were available for a period of six months. As previously observed, the plaintiff company repeatedly notified the defendant of its claim for storage, stated the price, and up to the very last moment, viz, as late as May, 1920, insisted upon and demanded payment for the, use of the space occupied. On May 3, 1920, plaintiff company’s claim was finally disallowed by the New York district ordnance salvage board because of the refusal of the plaintiff company to accept 30 cents per square foot per annum instead of 20 cents per square foot per month for the service rendered.
The single defense available to the defendant is one predicated upon the settlement contracts entered into on March 18 and 19, 1919, effective May 1, 1919, and June 11, 1919 (Finding III), by the comprehensive terms of which it is now insisted the plaintiff company is precluded from recovery. We say this advisedly, for the defendant apparently concedes the right to compensation subsequent to this event. As usual, in cases where contracts were suddenly canceled, the contractor was invited to negotiate a settlement of loss and damage growing out of the contracts. This was done and a settlement effected, and doubtless this transaction, if standing alone and unattached to what occurred with reference to storage facilities, both before and after its execution, might furnish sufficient grounds to con- *293 elude that this claim, like all other contractual obligations, was included therein. A contract is to be construed according to its terms and the subject matter with which the parties were dealing. The situation of the parties, when the settlement contracts were entered into with respect to storage, was not the same as obtained during the contractual relationship. The plaintiff company’s present suit is not rested upon any obligation growing out of the express terms of its contracts with the defendant. On the contrary, the contention advanced is grounded upon a transaction which occurred and came into being after the termination of its express contracts, a relationship the result of, but foreign to, the reciprocal undertakings under the munitions contracts.
The plaintiff company furnished without complaint all the storage space required under the munitions contracts and about which there was no dispute. It. is indeed quite singular to contend- that this claim was included in the settlement contracts when at the moment they were executed the defendant was in possession of the storage space, and desired, intended- to, and did retain possession for an indefinite period thereafter. The very ambulatory character of defendant’s possession rendered settlement of the claim at the time the settlement contracts were made impossible of determination. The settlement contracts covered, and were intended to cover, the final conclusion of all disputes over responsibilities under the munitions contracts, such as payment for materials on hand, commitments made for materials, and a variety of details incident to the undertaking. The release executed was intended and did foreclose the plaintiff from asserting any claim, legal or equitable, liquidated or unliquidated, which attached as a contractual liability under the terms of the express contracts. To hold that the furnishing of 2,000 square feet of storage space for a period of about eight months after the contract relation had wholly ceased, and for several months after the execution of the settlement contracts, was a contractual obligation under the express contracts, and an incident of that relationship is, we think, untenable. The officers of the de *294 fendant in direct charge of the matter at no time attached such significance to the settlement contracts; on the contrary, continued negotiations for the final settlement' and payment of the claim for storage until as late as May, 1920.
The most difficult situation presented by the record is the harmonizing of conflicting claims as to the reasonable value of the facilities furnished. The plaintiff company quite ingeniously erects an insistence that it should be allowed approximately what the space was worth to it. With this contention we are unable to agree. It seems hardly possible for the claim to attain the proportions of a sum in excess of four hundred dollars a month. On the other hand, the defendant seems prone to minimize the value of the same. From the record we are able to arrive at what the proof establishes as the reasonable market value of storage space of the kind and character here involved. The materials stored required no extraordinary attention; they simply took up room not especially needed by the company. In no way did the space occupied seriously retard the plaintiff company’s activities and cause it serious loss. Being under no legal obligation to set aside certain portions of its plant to store the property of the defendant, it may recover what the space was reasonably worth, and no more. This we have fixed at forty cents per square foot per annum. Judgment will be awarded for $533.33. It is so ordered.
Graham, Judge; Hay, Judge; Downey, Judge; and Campbell, Chief Justice, concur.